BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

MAR -3 1978

IN RE FINE PAPER ANTITRUST LITIGATION )   DOCKET NO. 323

CLERK OF THE PANEL

OPINION AND ORDER

AP 323
3/3/78

BEFORE JOHN MINOR WISDOM*, CHAIRMAN, AND EDWARD WEINFELD*,
EDWIN A. ROBSON*, JOSEPH S. LORD, III, STANLEY A. WEIGEL,
ANDREW A. CAFFREY, AND ROY W. HARPER, JUDGES OF THE PANEL

PER CURIAM

This litigation presently consists of fifteen actions
pending in eight federal districts:  four in the Northern
District of Illinois; three each in the District of
Connecticut and the Eastern District of Pennsylvania; and
one each in the Southern District of Ohio, the District
of South Dakota, the Northern District of California,
the Southern District of New York, and the Western District
of Missouri.

The complaints in these actions basically allege that
from as early as 1965 until 1977, the defendants and various
co-conspirators conspired at the mill level, in violation of
Section 1 of the Sherman Act, to fix, raise, maintain and
stabilize the price of fine paper[1] and to eliminate inter-

---

\* Judges Wisdom, Weinfeld and Robson took no part in the
decision of this matter.

[1] The complaints in this litigation generally describe
"fine paper" as follows:

> Fine paper means all types and kinds of business
> and commercial printing and writing papers, converting
> papers, and publication papers, including, but not
> limited to, coated and uncoated bonds, off-set, carbon-
> less, card stock, envelopes, tablets, form bonds, coated
> book papers, and xerographic papers.

and intra-brand competition among their wholesaler customers.
All the actions were filed as purported class actions.  While
there are some variations in the descriptions of the classes
sought, most are national classes of all, or some group of,
fine paper purchasers.  The complaints name a total of sixteen
defendants, including thirteen defendants that are named in
all actions and one defendant that is named in fourteen actions..

A federal grand jury in the Eastern District of
Pennsylvania currently is investigating possible antitrust
violations in the manufacture, distribution and sale of
paper and paper products.  No indictments have been
returned, and the grand jury's investigation is continuing.
Additionally, the Federal Trade Commission (FTC) has recently
authorized its Boston Regional Office to investigate certain
aspects of the fine paper industry. [2/]

---

[2/]   Many of the parties before the Panel are in dispute over
the relevance of the FTC investigation to this litigation.
In the FTC's resolution directing the investigation and
authorizing use of compulsory process, the FTC said the investi-
gation's purpose is to determine whether industry members may
be engaged in acts and practices which may be in violation of
Section 5 of the Federal Trade Commission Act, including, but
not limited to, resale price maintenance and other vertical
restraints of trade in connection with the manufacture, sale,
and distribution of fine paper products in the United States.
See 820 Antitrust & Trade Reg. Rep. (BNA), at A-20 (Sept. 29,
1977).
The common defendants and one plaintiff contend that
because plaintiffs in the litigation before us have alleged a
horizontal conspiracy at the mill level, the FTC investigation
of possible vertical restraints is not relevant to this
litigation.
The moving plaintiffs point out that the complaints in
this litigation allege that defendants engaged in a nationwide
horizontal conspiracy at the mill level to fix the price of fine
paper and to eliminate inter- and intra-brand competition among
their wholesaler customers.  These plaintiffs contend that the
FTC investigation is relevant to at least the allegations that
defendants conspired to eliminate competition.

This litigation is before the Panel on the motion of plaintiffs in twelve of the fifteen actions [3/] for transfer pursuant to 28 U.S.C. §1407 of all actions pending in districts other than the District of Connecticut to that district for coordinated or consolidated pretrial proceedings with the actions pending there.  In the alternative, these movants favor transfer to the Northern District of Illinois. All other parties that have taken a position before the Panel, except Crown Zellerbach Corporation, a defendant in three of these actions, favor or do not oppose transfer.  Various parties either cross-move for or urge transfer to the Southern District of Ohio, the Southern District of New York, the Northern District of Illinois or the Eastern District of Pennsylvania.

We find that these actions involve common questions of fact and that their transfer under Section 1407 to the Eastern District of Pennsylvania will best serve the con-venience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Although Crown Zellerbach is a defendant in actions in three different districts, and does not state that it opposes Section 1407 transfer in this litigation, this defendant never-theless states that inclusion of the actions against it in

---

3/  The Panel has been advised that additional actions have recently been filed in this litigation.  These actions will be treated as tag-along actions.  See Rules 1, 9 and 10, R.P.J.P.M.L., 65 F.R.D. 253, 255, 259-60 (1975).

Section 1407 proceedings would involve it in protracted pro-
ceedings involving actions to which Crown Zellerbach is not
a party.  Such a transfer, Crown Zellerbach asserts, would
unduly complicate and delay adjudication of the claims asserted
against it.

This argument is not persuasive.  Similar, if not
identical, arguments have often been made to, and rejected
by, the Panel in other multidistrict antitrust litigation,[4]/
and Crown Zellerbach here raises no novel considerations
or contentions.  The extent of coordinated or consolidated
pretrial proceedings, and the degree of any party's
participation in those proceedings, is, of course, a
matter solely within the discretion of the transferee
judge.  In re Equity Funding Corporation of America
Securities Litigation, 375 F. Supp. 1378, 1384 (J.P.M.L.
1974).

The parties favoring transfer to the District of
Connecticut and those parties that urge transfer to the
Southern District of Ohio have each made detailed arguments
and analyses of the fine paper industry in an attempt to
demonstrate that -- in terms of the locations of defendants'
principal places of business, the executive offices of
their fine paper divisions and/or defendants' fine paper
mills -- the center of gravity in this litigation is the
region surrounding and including, respectively,

---

4/  See, e.g., In re Sugar Industry Antitrust Litigation,
433 F. Supp. 1122, 1124-25 (J.P.M.L. 1977); 427 F. Supp.
1018, 1025, 1027 (J.P.M.L. 1977); In re Folding Carton
Antitrust Litigation, 415 F. Supp. 384, 386 (J.P.M.L. 1976).

Connecticut or Ohio.  Each of these groups also maintains that the transferee district that they favor would be a convenient and readily accessible forum for the parties and witnesses in this litigation.  The parties urging transfer to the Northern District of Illinois or the Southern District of New York also stress the central location and easy accessibility of those districts.

On the basis of the record before us, no district emerges as clearly the most appropriate transferee forum for this litigation.  On balance, however, we conclude that the Eastern District of Pennsylvania is preferable.  While the precise scope of the grand jury investigation being conducted there is not presently known to the Panel, a subpoena issued by that grand jury to at least one paper manufacturer in November 1976 has been included in the record before the Panel.[5]  A careful analysis of this subpoena reveals that it sought a significant quantity and variety of documents relating

---

[5]  Plaintiff in one of the Eastern  District of Pennsylvania actions attached a copy of this subpoena to its papers before the Panel.  The subpoena was directed to Continental Group, Inc., which is a defendant in In re Corrugated Container Antitrust Litigation, MDL-310, but is not a defendant in the actions now before the Panel.  This plaintiff also attached Continental's response to a conditional transfer order issued by the Panel in Corrugated Container in which Continental represents that ten other paper manufacturers have been served by the grand jury with similar subpoenas.  Brief of Continental Group, Inc. at 9, In re Corrugated Container Antitrust Litigation, MDL-310 (J.P.M.L., filed January 16, 1978).  It appears that at least eight of these manufacturers are defendants in the litigation now before us.  See Margolies, U.S. Starts Inquiry Into Paper Industry, Including Look at Possible Price-Fixing, Wall St. J., Nov. 26, 1976, at 2, col. 3.

- 6 -

to the structure and operation of the paper industry. [6] We
are persuaded that, whether or not the Philadelphia grand
jury returns any indictments affecting any segment of the
paper industry, many of the documents subpoenaed by that
grand jury will be relevant to the actions now before us.
Transfer of this litigation to the Eastern District of
Pennsylvania will therefore best facilitate any necessary
coordination between the private actions and the Government
proceedings occurring there. [7]   See, e.g., In re Corrugated
Container Antitrust Litigation, ___ F. Supp. ____, ____
(J.P.M.L., filed November 29, 1977) (slip opinion at 6-7);
In re Hawaiian Hotel Room Rate Antitrust Litigation, 438
F. Supp. 935, 936 (J.P.M.L. 1977); In re Cement and Concrete
Antitrust Litigation, 437 F. Supp. 750, 752-53 (J.P.M.L. 1977).
In addition, should there eventually arise any need to coordinate
activities in this litigation with the FTC's investigation of
the fine paper industry pending in Boston, we observe that the
relatively close geographical accessibility of Philadelphia
to Boston will facilitate that coordination. See In re

---

[6]  In Continental's response to the conditional transfer order
in Corrugated Container, Continental represents that it alone
already has produced approximately 10,000 documents to the Phila-
delphia grand jury pursuant to this subpoena.  Brief of Continental
Group, Inc., supra at 9.
[7]  We note that the court in the Eastern District of Pennsyl-
vania has entered an order impounding all materials obtained
by the Antitrust Division of the Department of Justice in the
course of the Philadelphia grand jury investigation.

Plumbing Fixture Cases, 295 F. Supp. 33, 33-34 (J.P.M.L. 1968).

  IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the following Schedule A and pending in districts other than the Eastern District of Pennsylvania be, and the same hereby are, transferred to that district and, with the consent of that court, assigned to the Honorable Joseph L. McGlynn, Jr. for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending there.

MDL- 323 -- IN RE "FINE PAPER" ANTITRUST LITIGATION

## SCHEDULE A

### NORTHERN DISTRICT OF ILLINOIS

Herst Litho, Inc. v. Boise Cascade
Corp., et al.
Civil Action
No. 77-C-2563

Wallis L. Weinper and Pearl B. LaThomus
d/b/a LaThomus & Co. v. Boise Cascade
Corp., et al.
Civil Action
No. 77-C-3468

The State of Illinois v. Boise
Cascade Corp., et al.
Civil Action
No. 77-C-4735

Campbell Office Supply Co., etc. v.
Boise Cascade Corp., et al.
Civil Action
No. 77-C-4759

### SOUTHERN DISTRICT OF OHIO

Copies Unlimited, Inc. v. Boise
Cascade Corp., et al.
Civil Action
No. C-1-429

### DISTRICT OF CONNECTICUT

State of Connecticut v. Boise Cascade
Corp., et al.
Civil Action
No. H-77-357

Phillip Meroney and Ruth Meroney v.
Boise Cascade Corp., et al.
Civil Action
No. H-77-517

William Fels t/a Fels Printing Co. v.
Boise Cascade Corp., et al.
Civil Action
No. H-77-542'

### EASTERN DISTRICT OF PENNSYLVANIA

The Pengad Companies, Inc. v. Boise
Cascade Corp., et al.
Civil Action
No. 77-3352

Moses Jaroslawicz, etc. v. Boise Cascade
Corp., et al.
Civil Action
No. 77-3183

Joli Greeting Card Co., Inc. v. Boise
Cascade Corp., et al.
Civil Action
No. 78-171

### DISTRICT OF SOUTH DAKOTA

State of South Dakota v. Boise Cascade
Corp., et al.
Civil Action
No. Civ-77-3034

### NORTHERN DISTRICT OF CALIFORNIA

William Grader v. Boise Cascade
Corp., et al.
Civil Action
No. C77-2435-CBR

Schedule A -- MDL-323 -- p. 2

SOUTHERN DISTRICT OF NEW YORK

Magazine Management Co., Inc. v. Boise          Civil Action
Cascade Corp., et al.                           No. 77 Civ 5445

WESTERN DISTRICT OF MISSOURI

State of Missouri v. Boise Cascade              Civil Action
Corp., et al.                                   No. 77-4317-CV-C

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE "FINE PAPER" ANTITRUST LITIGATION

### ORDER

On January 27, 1978, the Panel held a hearing in this litigation concerning the transfer, pursuant to 28 U.S.C. §1407, of fifteen actions pending in eight federal districts to a single federal district for coordinated or consolidated pretrial proceedings. On February 21, 1978, the State of Oregon moved the Panel to defer "for a reasonable time" ruling on the question of transfer of this litigation.1/ Oregon states that since the Panel's hearing on this matter, several states have either filed, or plan to file in the near future, complaints which are related to, but which expand the scope of, this litigation. Oregon represents that these complaints will broaden the scope of this litigation by, inter alia, naming as defendants not only those manufacturers named in the previously filed complaints already considered by the Panel, but also certain "merchant houses" which are wholesalers customers of these defendants. Oregon urges that the Panel defer ruling upon transfer in this litigation until such time as all facets of this litigation are before the Panel, including any possible arguments which may be raised in support of transfer to a district not yet considered by the Panel.

On February 22, 1978, plaintiffs in eleven of the fifteen actions considered by the Panel on January 27, 1978 opposed Oregon's motion. These plaintiffs contend that Oregon has not presented any new facts to the Panel that would warrant delaying the Panel's ruling in this litigation. These plaintiffs point out that at the hearing on this matter the Panel was informed by counsel that additional states contemplated filing new actions. Those actions simply should be treated as tag-along actions, these plaintiffs maintain.

The Panel having found upon consideration of the papers submitted that no good cause has been shown for delaying the Panel's ruling and order of transfer in this litigation,

IT IS ORDERED that the State of Oregon's motion for the Panel to defer ruling and order of transfer in this litigation be, and the same hereby is, DENIED.

FOR THE PANEL:

_John Minor Wisdom_

John Minor Wisdom
Chairman

1/ The State of Oregon filed a complaint in the District of Oregon against numerous fine paper manufacturers on February 2, 1978, which of course was after the Panel heard this matter.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUL 11 1978

PATRICIA D. HOWARD
CLERK OF THE PANEL

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE "FINE PAPER" ANTITRUST LITIGATION ) Docket No. 323

JP-323
7/11/78

State of Arizona v. Boise Cascade Corp., et al.,
  D. Arizona, C.A.No. Civ-78-66-CAM
Fred Ernst, etc., et al. v. Boise Cascade Corp., et al.,
  N.D. California, C.A. No. C78-0722-RHS
State of California v. Boise Cascade Corp., et al.,
  N.D. California, C.A.No. C78-0774-SW
State of Utah v. Boise Cascade Corp., et al., D. Utah,
  C.A. No. C78-0131

OPINION AND ORDER
————————————

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON, JOSEPH S. LORD, III, STANLEY A. WEIGEL,
ANDREW A. CAFFREY, AND ROY W. HARPER*, JUDGES OF THE
PANEL

PER CURIAM

On March 3, 1978 the Panel, pursuant to 28 U.S.C.
§1407, transferred twelve actions to the Eastern District
of Pennsylvania and, with the consent of that court,
assigned those actions to the Honorable Joseph L.
McGlynn, Jr. for coordinated or consolidated pretrial
proceedings with three actions already pending in that

————————————
*Judge Harper took no part in the decision of this
matter.

district. In re "Fine Paper" Antitrust Litigation,
446 F.Supp. 759 (J.P.M.L. 1978).[1] Since that time,
the Panel has transferred twelve tag-along actions
to the Eastern District of Pennsylvania for inclusion
in the Section 1407 proceedings pending there, and
some additional actions have been filed in that district.
All the actions in the transferee district were filed
as purported class actions. While there are some variations
in the descriptions of the classes sought, most are
national classes of some  group of fine paper purchasers.

---

[1]  On the same day that the Panel issued its opinion
and order transferring these actions, the Panel issued
an order concerning a motion brought by the State of
Oregon for the Panel to defer ruling on the question
of transfer in this litigation "for a reasonable time."
In its motion, Oregon represented that subsequent to
the Panel's original hearing on this matter, additional
complaints had been filed, and others might soon be
filed, which were related to, but expanded the scope
of, this litigation by, inter alia, naming as defendants
not only those manufacturers named in previously filed
complaints, but also certain "merchant houses," which
are wholesaler customers of the manufacturer defend-
ants.  Oregon urged that the Panel defer its ruling
until such time as all facets of this litigation were
before the Panel, including any arguments that might
be raised in support of transfer to a district not
then considered by the Panel.  The Panel found that no
good cause had been shown for delaying the Panel's
ruling and order of transfer of this litigation and,
accordingly, denied Oregon's motion.

The complaints in most of the actions (mill actions) in the transferee district basically allege that from as early as 1965 until 1977 the defendants and various co-conspirators conspired at the mill level, in violation of Section 1 of the Sherman Act, to fix the price of fine paper and to eliminate inter- and intra-brand competition among their wholesaler customers.[2/] All the complaints in these actions name as defendants only companies (mills) that are engaged in the manufacture and sale of fine paper.

---

[2/] The allegations of these complaints concerning the purported elimination of competition among defendants' wholesaler customers are basically as follows:

> Defendants and co-conspirators employed threats and other concerted action against merchant houses to secure adherence to an aggregation of trade restraints designed to minimize price discounting and otherwise minimize intrabrand competition between [mill]-owned and independent merchant houses, the substantial terms of which were that:
> (i)   Merchant houses would sell fine paper at regular bracket prices and discount terms fixed by the defendants and co-conspirators; and
> (ii)  Non-conforming merchant houses were systematically eliminated as competitors.

These complaints allege that, as a result of these activities, "competition in the sale of fine paper between the defendants and co-conspirators and between [mill]-owned and independent merchant houses has been restrained."

The complaints in seven of the actions in the transferee district, filed by, respectively, the states of Colorado, New Mexico, Nebraska, Oregon, Missouri, Pennsylvania and Arkansas (the merchant house actions) include as defendants most of the mill defendants named in the other actions in the transferee district. These complaints, however, also name two paper trade associations and a variety of "mill-affiliated" and "independent" merchant houses [3] as either defendants or co-conspirators. The complaints in these actions include many of the allegations involved in the complaints in the mill actions in the transferee district, and, in addition, the complaints in the merchant house actions allege that the conspiracy in the fine paper industry included concerted action among the merchant house defendants and the mill defendants to fix the price of fine paper, to suppress and eliminate competition from independent merchant houses, and to allocate governmental agency customers and rig bids to these customers.

---

[3] One of the movants now before the Panel draws the following distinctions between "mill-affilated" and "independent" merchant houses: "An 'independent merchant house' [unlike a 'mill-affiliated' merchant house] is a merchant house which is not owned or controlled by any mill and is not tied directly or indirectly to the output of a single mill but, rather, typically purchases paper from a number of different mills." Motion to Vacate Conditional Transfer Order at 2 n.2, In re "Fine Paper" Antitrust Litigation, MDL-323 (J.P.M.L., filed April 11, 1978).

The four actions presently before the Panel were
commenced by, respectively, the states of Arizona,
California and Utah and by a private party, as class
actions. The state actions are each brought on behalf
of a class of all other political subdivisions within
the respective state, and the private party in the
fourth action basically seeks to represent a national
class of all non-governmental purchasers of fine paper.
Each complaint names a variety of defendants, including
mills, mill-affiliated merchant houses and independent
merchant houses. Most of these mills, one of these
mill-affiliated merchant houses and one of these indepen-
dent merchant houses are common defendants to all four
actions. All these common defendants, plus all the
other mills  and some of the other mill-affiliated
and independent merchant houses named as defendants
in these four actions, are also named as defendants
in actions in the transferee district. The complaint
in the Arizona action also specifically names as co-
conspirators the two paper trade associations named
as co-conspirators in **the merchant house actions in the**
transferee district and eleven merchant houses not
previously involved in any of the actions in the transferee
district.

Except for the class action allegations, the allegations of the complaints in the four actions now before the Panel are very similar to those in the complaints in the merchant house actions now pending in the Eastern District of Pennsylvania.

Because these four actions appeared to involve common questions of fact with the actions in the transferee district, the Panel issued orders conditionally transferring these actions to the Eastern District of Pennsylvania. Two independent merchant house defendants [4/] have moved the Panel partially to vacate the conditional transfer orders concerning those actions and to order the separation and retention in the transferor districts (or one of them) of the claims asserted in these four actions against the independent merchant house defendants. Two additional independent merchant house defendants [5/] have similarly moved the Panel with respect to the Arizona action only. Plaintiffs in these four actions favor transfer of all claims in these actions to the Eastern District of Pennsylvania.

---

4/ One of these two movants is named as a defendant in one of the merchant house actions in the transferee district and as a co-conspirator in another of these actions. The other movant is named as a co-conspirator in one of the merchant house actions in the transferee district.

5/ One of these two movants is named as a defendant in two of the merchant house actions in the transferee district and as a co-conspirator in three other merchant house actions in the transferee district. The other movant is named as a defendant in one merchant house action in the transferee district.

-7-

We find that the four actions before the Panel
share questions of fact with the actions previously
transferred to the Eastern District of Pennsylvania
and that transfer of these four actions in their entirety
to that district under Section 1407 will best serve
the convenience of the parties and witnesses and promote
the just and efficient conduct of this litigation.

The defendants that object to inclusion of claims
against the independent merchant house defendants in
the Section 1407 proceedings pending in the Eastern
District of Pennsylvania argue that whatever claims
the plaintiffs in the actions now before the Panel
may have against these defendants will involve unique
questions of fact regarding the conduct of these particular
defendants, and that these questions of fact are not
involved in the "mill defendant" actions pending in
the transferree district. If the claims against the
independent merchant house defendants are separated
and retained in the districts in which the actions
now before the Panel were filed (or in one of those
districts), these parties contend, discovery concerning
these claims can proceed expeditiously and relatively
inexpensively, without being encumbered by the substantially
broader pretrial proceedings pending in the transferee
district.

The opponents of transfer also argue that inclusion
of the claims against them in Section 1407 proceedings
would unduly complicate those proceedings and result
in prejudice to the independent merchant houses. The
opponents of transfer maintain that the independent
merchant houses may be included in several of the plaintiff
classes which are being sought in the Eastern District
of Pennsylvania. These parties assert that independent
merchant house defendants, as major buyers of fine
paper products, have interests clearly in conflict
with the mill defendants and that inclusion of the
claims against the independent merchant houses in the
Section 1407 proceedings would unnecessarily create
severe manageability problems for the parties and the
transferee judge. Some parties assert that the plaintiffs'
and defendants' initial organizational efforts in the
transferee district already have been severely hamstrung
by the presence of claims against the independent merchant
houses. Some of the opponents of transfer maintain
that any coordinaton of discovery or other pretrial
proceedings that may become necessary involving the
claims against the independent merchant houses and
the actions pending in the transferee district can
be accomplished by appropriate orders issued by the
involved courts.

-9-

The two independent merchant house defendants that
have moved the Panel partially to vacate the conditional
transfer orders in all four actions before the Panel
suggest as an alternative approach that the Panel establish
a second transferee district in the Western United
States for Section 1407 proceedings concerning claims
against the independent merchant house defendants.[6]

We do not find these arguments persuasive. Initially,
we note that the actions now before the Panel and the
merchant house actions in the transferee district
involve, either as defendants or as named co-conspirators,
many of the same mill-affiliated merchant houses and
independent merchant houses, as well as all the same
mills. Indeed, three of the four movants are already
defendants in the transferee district, **and the fourth**
is a named co-conspirator there.  And although we recognize
that the actions now before the Panel and the actions

_____

6/ These parties also state that

    [a] final alternative approach which may be
suggested is consolidation of the four Western actions
in their entirety in a Western transferee district.
That alternative is distinctly less desirable because
it would not achieve separation of the claims against
the independent merchant house defendants and avoid
the conflict described above. However, that course
would at least gain some of the convenience benefits
and allow the pretrial Judge to minimize the conflict
problems, without the confusion which would flow
from a consolidation of Western actions with 28
other cases which would treat the independent merchant
houses as plaintiffs rather than defendants.

Motion To Vacate Conditional Transfer Orders at 10
n.6, In re "Fine Paper" Antitrust Litigation, MDL-323
(J.P.M.L., filed May 12, 1978).

in the transferee district involve some different **defend-
ants** and some dissimilar factual issues, we are convinced
that all claims in all actions in this litigation share
numerous substantial questions of fact concerning whether
there has been a conspiracy to engage in restrictive
trade practices, including price fixing, in the fine
paper industry, and if so, who took part in this illegal
conduct and who was affected by it. Thus Section 1407
transfer of each entire action  now before us is necessary
in order to prevent duplicative discovery and eliminate
any possibility of conflicting class and other pretrial
rulings. In particular, we observe that some of the
purported classes in the transferee district are broad
enough to encompass all the purported class members
in the actions now before us.

We find no merit in the argument that the allegedly
conflicting interests of the independent merchant houses
and the other parties in the transferee district make
Section 1407 transfer of the claims in these four actions
against the independent merchant houses inappropriate.
This alleged conflict is already before the transferee
court because, as we have noted, **all four moving independent
merchant house defendants in the actions now before**
us are already defendants or named as a co-conspirator
in the transferee district.  **In a recent decision we were
faced with the question of whether to transfer a tag-along
action that named as a defendant a member of a plaintiff class**

in previously established Section 1407 proceedings.
In re Sugar Industry Antitrust Litigation, 437 F.Supp.
1204 (J.P.M.L. 1977). Similarly, in another recent
decision we were confronted with the issue of whether
to transfer a tag-along action that involved purported
class members who were defendants in previously established
Section 1407 proceedings. In re Corrugated Container
Antitrust Litigation, 447 F.Supp. 468 (J.P.M.L. 1978).
In both instances, we determined that the purposes
of Section 1407 would best be furthered by assigning
all actions to a single transferee judge who would
be in the best position, by becoming  familiar
with all aspects and nuances of the litigation, to
protect the rights of all concerned, while at the same
time streamlining the entire pretrial process. Id.
at 470-71; In re Sugar Industry Antitrust Litigation,
supra, 437 F.Supp. at 1206-08. In In re Corrugated
Container Antitrust Litigation we emphasized that

> any antagonistic interests among the parties in the
> various actions may be accommodated by the transferee
> judge in designing the pretrial program. See ...
> In re Delta Airlines Crash at Boston, Massachusetts,
> 395 F.Supp. 1405, 1407 (J.P.M.L. 1975); In re Franklin
> National Bank Securities Litigation, 393 F.Supp.
> 1093, 1095 (J.P.M.L. 1975). And discovery
> on any issues unique to [any action or party] may
> be scheduled by the transferee judge to proceed
> in a separate discovery schedule concurrently with
> discovery on common issues. See In re Republic
> National-Realty Equities Securities Litigation,
> 382 F.Supp. 1403, 1405-06 (J.P.M.L. 1974).

In re Corrugated Container Antitrust Litigation, supra,
447 F.Supp. at 471, quoting from In re Beef Industry
Antitrust Litigation, 432 F.Supp. 211, 213 (J.P.M.L. 1977).
The opponents of transfer here have raised no significant
considerations or arguments not already carefully consi-
dered by the Panel in the Corrugated Container and
Sugar litigations, and we discern no reason why those
decisions should not be followed in the present litigation.
We note, of course, that the objectors to transfer
need not participate in pretrial proceedings unrelated
to the claims against them. See, e.g., In re Airport
Car Rental Antitrust Litigation, 448 F.Supp. 273, 275
(J.P.M.L. 1978); Manual for Complex Litigation,
Parts I and II, §§2.31 (rev. ed. 1977).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C.
§1407, the actions entitled State of Arizona v. Boise
Cascade Corp.,et al., D. Arizona, C.A. No. Civ-78-66-CAM;
Fred Ernst, etc., et al. v. Boise Cascade Corp.,et al.,
N.D. California, C.A. No. C78-0722-RHS; State of California
v. Boise Cascade Corp., et al., N.D. California, C.A.
No. C78-0774-SW; and State of Utah v. Boise Cascade
Corp., et al., D. Utah, C.A. No. C78-03131, be, and

the same hereby are, transferred to the Eastern District
of Pennsylvania and, with the consent of that court,
assigned to the Honorable Joseph L. McGlynn, Jr. for
coordinated or consolidated pretrial proceedings with
the actions already pending there.